RENDERED:  DECEMBER 16, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0412-MR

GREG STUMBO AND MARY
KAREN STUMBO                                                    APPELLANT


                    APPEAL FROM FAYETTE CIRCUIT COURT
v.              HONORABLE ERNESTO M. SCORSONE, JUDGE
                    ACTION NO. 20-CI-03708



LEXINGTON-FAYETTE URBAN
COUNTY GOVERNMENT; LFUCG
PLANNING COMMISSION; AND
LFUCG BOARD OF PLANNING
AND ZONING                                                        APPELLEES




                              OPINION
                             AFFIRMING

                           ** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; CALDWELL AND MAZE, JUDGES.

MAZE, JUDGE:  Greg and Mary Karen Stumbo (the Stumbos) appeal from an

order of the Fayette Circuit Court which affirmed the decision of Lexington-

Fayette Urban County Government Board of Planning and Zoning (the Planning

Commission) to deny a certificate of appropriateness (COA) for their property. The Stumbos allege that the Planning Commission's action was arbitrary, in excess of its statutory authority, in violation of their due process rights, and not supported by substantial evidence. We conclude that these allegations are not supported by the record. Hence, we affirm.

## I.    Facts and Procedural History

The relevant facts of this action are not in dispute. In December 2018, the Stumbos purchased a residential property located at 221 Barberry Lane in Fayette County. The property is located within an H-1 overlay zone, which was designated as a historic district in 1997. In pertinent part, the Lexington-Fayette Urban County Zoning Ordinance (Zoning Ordinance) requires a property owner to obtain a COA prior to any new construction, exterior change, or demolition of any structure within the historic district. Zoning Ordinance Section 13-7.

After purchasing the property, the Stumbos began renovations on the 1942 brick masonry house. They testified that the brick was in poor condition, with many cracks and water-invasion issues. During the renovation process, they began painting the brick exterior white. The Historic Preservation Office (HPO) received a complaint from a neighbor that the brick was being painted. Upon receipt of the complaint, the HPO staff made a visit to the property. Based on the Zoning Ordinance, the staff issued a stop-work order.

Thereafter, the Stumbos filed an application for a COA to paint the masonry brick exterior. The hearing took place on August 19, 2020, before the Board of Architectural Review (BOAR). The Stumbos raised issues of sufficiency of notice of the hearing, their lack of knowledge that the property was in a historic district, and the painting was consistent with the historic district. Following the hearing, the BOAR denied the Stumbos' application, concluding that the proposed changes "are not compatible to the design, character and scale of the historic district in which the property is located[,]" and "do not meet the intent of the 'Local Historic District and Landmark Design Guidelines' adopted by the Historic Commission." The BOAR also directed the Stumbos to remove the paint from the brick exterior.

The Stumbos then filed an appeal to the Planning Commission. The Stumbos again raised issues of the sufficiency of notice of the BOAR hearing, their lack of knowledge that the property was in a historic district, the consistency of painting the residence with the design guidelines, and their objections to the BOAR's order directing removal of the paint from the brick. At the hearing on November 12, 2020, the Planning Commission considered the record presented to the BOAR, the case review provided by the Division of Historic Preservation, and the applicable portions of the Zoning Ordinance and adopted Design Guidelines. The Planning Commission also considered evidence regarding the available means

of removing the paint, and the notice which the Stumbos received that the property is located within a historic district. Following the hearing, the Planning Commission voted to affirm the BOAR's denial of the COA.

The Stumbos next filed an appeal of the Planning Commission's action to the Fayette Circuit Court, as provided by KRS[1] 100.347. After considering the arguments of counsel and the record presented, the circuit court concluded that the actions of the BOAR and Planning Commission: (1) were not in excess of their statutory powers; (2) afforded sufficient due process to the Stumbos; and (3) were supported by substantial evidence of record. The Stumbos now appeal to this Court. Additional facts will be set forth below as necessary.

## II. Standard of Review

KRS 100.347 provides for appeals from a final action of the Planning Commission to the circuit court. However, the scope of review for all appeals from administrative agencies was set forth by the former Court of Appeals in *American Beauty Homes Corp. v. Louisville and Jefferson County Planning and Zoning Commission*, 379 S.W.2d 450 (Ky. 1964).

> Basically, judicial review of administrative action is concerned with the question of *arbitrariness*. . . .
>
> . . . .

---

[1] Kentucky Revised Statutes.

The above three grounds of judicial review, (1) action in excess of granted powers, (2) lack of procedural due process, and (3) lack of substantial evidentiary support, effectually delineate its necessary and permissible scope. . . . In the final analysis all of these issues may be reduced to the ultimate question of whether the action taken by the administrative agency was arbitrary.

*Id.* at 456-57 (footnotes and citations omitted). More recently, the Kentucky

Supreme Court explained the parameters of whether a decision was arbitrary:

Judicial review of an agency decision is limited to the determination of whether the decision was arbitrary, i.e., whether the action was taken in excess of granted powers, whether affected parties were afforded procedural due process, and whether decisions were supported by substantial evidence. Issues of law involving an administrative agency decision will be reviewed on a *de novo* basis.

*Louisville Metro Health Dep't v. Highview Manor Ass'n, LLC*, 319 S.W.3d 380,

383 (Ky. 2010) (quoting *Sebastian-Voor Properties, LLC v. Lexington-Fayette*

*Urban County Gov't*, 265 S.W.3d 190, 195 (Ky. 2008)).

## III.    Action in Excess of Granted Powers

The Stumbos raise several arguments as part of their due-process

claims which actually assert that the Planning Commission acted in excess of its

statutory authority. The Stumbos first argue that Lexington-Fayette Urban County

Government lacks the authority to establish overlay historical districts or to enforce

regulations pertaining to such districts. However, the Stumbos never raised this issue before either the Planning Commission or the circuit court.

It is well-established that an issue not raised or adjudicated by the trial court will not be considered when raised for the first time on appeal. *See Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 734 (Ky. 2009). The only exception to this rule is the question of "whether *the trial court* had general subject-matter jurisdiction." *Commonwealth v. Steadman*, 411 S.W.3d 717, 724 (Ky. 2013) (emphasis added). Because the Stumbos only challenge the Planning Commission's authority over this particular area, we must conclude that the issue is deemed waived. Therefore, we will not address the issue further.

The Stumbos next contend that the BOAR's order directing them to remove the paint from the residence amounts to an unconstitutional taking of their property. To the extent that the Stumbos challenge the legislature's delegation of authority to enforce zoning regulations, we must note that KRS 418.075(1) requires notice be given to the Attorney General's office in any proceeding that involves the validity of a statute. Since the Stumbos did not provide such notice, the constitutionality of the enactment is not before this Court.

On the other hand, the Stumbos' argument may be construed as a challenge to the reasonableness of the exercise of authority under the Zoning Ordinance. In such cases, "[t]he presumption is in favor of the ordinance and the

burden is on the property owner attacking it to show its unreasonableness. Should reasonable minds differ as to whether the restriction has a substantial relation to the public health, morals, safety, or general welfare, the ordinance must stand as a valid exercise of the police power." *McCollum v. City of Berea*, 53 S.W.3d 106, 111 (Ky. App. 2000) (citation omitted).

The Stumbos generally concede that preservation of historic structures is a valid exercise of zoning authority under the state's police powers. However, they contend that enforcement of the regulations in this instance was unreasonable. In particular, the Stumbos assert that painting was the necessary remedy for water leakage into the house. They further maintain that removal of the paint would damage the underlying brick and diminish the value of the residence. As a result, the Stumbos argue that the denial of a COA and the remediation order effectively amounts to a taking of their property without just compensation.

However, the Stumbos fail to show that enforcement of the historic district regulations would be unreasonable in this case. As noted above, Guideline I.3G states that brick "should not be covered with silicone-based water sealants or liquid siding" and Guideline I.3H states that brick "that has never been painted should not be painted." The Stumbos do not point to any evidence, other than their own testimony, that painting was necessary to preserve the integrity of the structure.

Furthermore, the Stumbos elected to paint the brick without first checking whether it was permitted under the Zoning Regulations and Design Guidelines. In so doing, they took the risk that the modification of the exterior would not be permitted. Although there was evidence that removal of the paint would be costly and difficult, there was no evidence, other than their own testimony, that removal would substantially damage the brick. Consequently, the Stumbos failed to establish that enforcement of the Zoning Ordinance and Design Guidelines was unreasonable.

## IV. Procedural Due Process

The Stumbos next claim that the actions by the BOAR and the Planning Commission violated their rights to procedural due process. Fundamentally, the hallmarks of procedural due process are notice and an opportunity to be heard. *See Hilltop Basic Resources, Inc. v. County of Boone*, 180 S.W.3d 464, 469 (Ky. 2005). "'[D]ue process,' . . . is not a technical conception with a fixed content unrelated to time, place and circumstances" but "is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S. Ct. 893, 902, 47 L. Ed. 2d 18 (1976) (internal quotation marks and citations omitted). Due process merely requires that all affected parties be given "the opportunity to be heard at a

meaningful time and in a meaningful manner." *Id.* at 333, 96 S. Ct. at 902 (internal quotation marks and citations omitted).

The Stumbo's first due-process argument is that they were provided insufficient notice of the BOAR hearing. Section 13-7(b) of the Zoning Ordinance sets out procedures for issuance of a COA for exterior changes. In pertinent part, Section 13-7(b)(1)b. requires the BOAR to provide notice by first class letter "at least fourteen (14) days in advance of the public hearing." The record in this case reflects that the BOAR's letter notifying the Stumbos of the public hearing on August 19, 2020, was dated July 30, but was postmarked August 5. The Stumbos contend that this fails to meet the notice requirements of the Zoning Ordinance or procedural due process.

We disagree. The postmark on the BOAR's notice letter shows that it was mailed fourteen days prior to the hearing. The Stumbos cite to no authority that the notice must be received fourteen days prior to the hearing. Furthermore, the Stumbos were advised of the hearing date by email on August 6. Moreover, the Stumbos were clearly aware of the hearing, as they attended it and presented evidence. Thus, there is no evidence that they were unfairly prejudiced by the allegedly untimely notice.

Second, the Stumbos argue that they lacked sufficient notice of the historic overlay district and the Design Guidelines. The Stumbos contend that they

had no way to know the property was in a historic district prior to purchasing it. They note that the district was not mentioned in any of the sales literature and that the restrictions were not included in any recorded deed or plat. As a result, the Stumbos assert that it was unreasonable to apply these restrictions against them.

The Stumbos cite to no authority requiring that Zoning Regulations or Design Guidelines be included in the deed or in a published plat. Rather, a zoning ordinance must provide fair notice to the public that certain conduct is prohibited and minimal guidelines to aid officials in the enforcement of that prohibition. *Hengehold v. City of Florence*, 596 S.W.3d 599, 607 (Ky. App. 2020). The Zoning Ordinance and adopted Design Guidelines clearly provide such notice and guidelines. The Stumbos do not challenge the sufficiency of the description of the historic overlay district in the Zoning Ordinance. And finally, the Planning Commission noted that there is a sign designating the area as part of a historic overlay district. Consequently, we agree with the circuit court that the Stumbos had sufficient notice of the existence of the historic district and its restrictions.

In their last due-process argument, the Stumbos contend that the Planning Commission improperly considered evidence that was not presented at the hearing before the BOAR. The Stumbos complain only that the Planning Commission considered the staff report during its deliberations on whether to

uphold the BOAR's denial of the COA.  However, the Zoning Ordinance clearly permits it to do so.

Section 13-7(f) of the Zoning Ordinance sets forth the scope of the Planning Commission's review from the BOAR's denial of a COA.  In the conduct of that review, Subsection b. provides:

> After notice as required above, the Commission shall conduct a public hearing and vote to approve or deny the appeal.  *At the hearing, the Planning Commission shall allow its staff, Historic Preservation Office staff, the Board members, the appellant, protestors, and other interested citizens to testify and rebut the evidence presented provided that the Chairman shall have the power to limit repetitive testimony and exclude irrelevant testimony and evidence*.  In its deliberations, the Planning Commission shall give due consideration to the decision of the Board and the finding and conclusions reflected in the Board's record and shall apply the design guidelines adopted by the Historic Preservation Commission.

(Emphasis added.)

The Planning Commission was well within its discretion to allow introduction of the staff report and testimony.  The Stumbos do not allege that they were unable to present evidence to rebut that information.  Therefore, we find no due process violation.

V.     **Sufficiency of the Evidence**

Finally, the Stumbos challenge the sufficiency of the evidence supporting the Planning Commission's factual findings to deny the COA.  On

-11-

factual issues, a court "reviewing the agency's decision is confined to the record of proceedings held before the administrative body and is bound by the administrative decision if it is supported by substantial evidence." *Commonwealth, Transportation Cabinet Dep't of Vehicle Regulation v. Cornell*, 796 S.W.2d 591, 594 (Ky. App. 1990). "'[S]ubstantial evidence' means evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men." *Owens-Corning Fiberglas Corp. v. Golightly*, 976 S.W.2d 409, 414 (Ky. 1998) (citations omitted). "[I]f there is substantial evidence in the record to support an agency's findings, the findings will be upheld, even though there may be conflicting evidence in the record." *Kentucky Comm'n on Human Rights v. Fraser*, 625 S.W.2d 852, 856 (Ky. 1981).

The Stumbos argue that there was no substantial evidence to support the Planning Commission's findings that (1) they were on notice the property was located within a historic district; or (2) the brick exterior had never been painted. We conclude there was substantial evidence to support both findings.

On the first question, the H-1 historic overlay zone was created in 1997 and was a matter of public record. In addition, there was a sign in the vicinity designating the area as a historic zone. As discussed above, we conclude this was sufficient to place the Stumbos on inquiry notice of the existence of the district and restrictions.

On the second finding, the Planning Commission considered photographs showing that the brick had not been painted at the time the Stumbos purchased the residence. Against this evidence, the Stumbos merely asserted that they found flecks of paint on the brick near the window casements and that other brick structures in the neighborhood had been painted. Under the circumstances, we conclude that there was substantial evidence to support the Planning Commission's finding on this matter.

## VI. Conclusion

Accordingly, we affirm the order of the Fayette Circuit Court upholding the decision of the Planning Commission.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Anna Stewart Whites
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Tracy W. Jones
Lexington, Kentucky